IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| ROGER A. YARBOROUGH, #680961 | § | |
| VS. | § | CIVIL ACTION NO. 6:14cv950 |
| OFFICER A. LOFTIS | § | |

## MEMORANDUM OPINION ADOPTING REPORT AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE

Plaintiff Roger A. Yarborough ("Yarborough"), proceeding *pro se* and *in forma pauperis*, filed this this civil rights lawsuit pursuant to § 1983. This Court ordered that the matter be referred to the United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) and (3) and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to United States Magistrate Judges.

**I. Background**

The record indicates that Yarborough refused to comply with Officer Loftis' order to get up from the chow table while Yarbrough and other inmates ate breakfast. After he then refused to show her his identification card, Yarbrough spit on Officer Loftis' face—striking her in the chest. Officer Loftis immediately struck Yarborough with a closed fist on his face and, as he continued to move toward her, she struck him two more times in the face with her closed fist. After he was restrained by additional responding officers, Yarborough was taken to the medical department where he complained that his face hurt.

Nurse Sulser examined him and noted that there were no injuries present, but rather facial redness. The written injury report notes that Yarborough did not initially complain about an injury and that no injuries were immediately present at the time of his medical screening. While

1

Yarborough asserts that Officer Loftis' actions resulted in a black eye and a deep cut to the inside of his mouth, Nurse Sulser noted "no reported injury or observed" but did highlight the facial redness within the report. Yarborough denies spitting on Officer Loftis, arguing that if he had done so, there would be physical evidence. Instead, he maintains that he simply blew her a kiss.

Subsequently, Yarborough was found guilty of spitting on Officer Loftis during a disciplinary hearing. He then lost 360 days of good-time and was given a forty-five day commissary restriction, a forty-five day cell restriction, and a reduced custody classification. Importantly, Yarborough asserts that the incident caused him to lose an opportunity for parole. After filing both a Step One and a Step Two grievance, of which prison officials found no grievance, Yarborough filed this federal complaint in September 2014 in which he seeks monetary relief—including punitive damages stemming from his pain and suffering.

## II. Officer Loftis' Motion for Summary Judgment

In her motion for summary judgment, (Dkt. #27), Officer Loftis contended that Yarborough's claim was barred by *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). She also maintained that she was entitled to qualified immunity and that his claim was barred by the Eleventh Amendment. Highlighting that she applied the minimum amount of force necessary to regain compliance, Officer Loftis stressed the importance of prison security and order.

In response to her motion for summary judgment, Yarborough argued that her entire account of the incident was incorrect. Specifically, he denies spitting on Officer Loftis, asserts that she never requested his identification card, and contends that because he had a target release date of June 2014, he would have never engage in something as "crazy" as spitting on an officer.

After a review of the pleadings and the summary judgment evidence, the Magistrate Judge issued a Report recommending that Defendant Officer Loftis motion for summary judgment be

granted and Yarborough's claims against her be dismissed with prejudice. (Dkt. #31). Yarborough has filed timely objections, (Dkt. #33)—in which he reiterates the same exact arguments raised in his initial complaint and addressed by the Magistrate Judge's Report and Recommendation.

### III. Summary Judgment Evidence

Officer Loftis submitted several reports stemming from the incident. First, the TDCJ use-of-force report notes that Yarborough "assaulted staff by spitting on officer's chest area thus resulting in a use of force in that staff applied minimum force necessary to prevent further assault." (Dkt. #27, Exhibit A at 4). While the report indicates that officers failed to record the incident, as required by TDCJ policy, TDCJ did not find that failure to be an aggravation of the rules. Moreover, the injury report shows that injuries were not present when Yarborough was screened and that he was not treated for any injuries. (Dkt. #27, Exhibit A at 23). The injury report denotes only that Yarborough experienced facial redness. (Dkt. #26, Exhibit A at 22-25).

Another nurse examined Yarborough five days after the incident. He complained that he was experiencing problems with eating and drinking stemming from a cut inside his mouth; he specifically noted on the form that his pain was a "0." The nurse found "no visible injuries or respiratory distress" and assessed no "adverse health effects from use of force." Yarborough was then released.

### IV. Legal Standard

*A. Summary Judgment Standard*

A court shall grant summary judgment only where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law. Rule 56(c), Fed. Civ. P. In determining whether there is a genuine dispute of a material fact, the court must examine the evidence and inferences drawn therefrom in the light most favorable to the

nonmoving party. *See S.E.C. v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1994). Summary judgment is appropriate "where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (internal citations omitted).

### B. Excessive Force

It is well-established that the use of excessive physical force against a prisoner may constitute cruel and unusual punishment. *See Hudson v. McMillian*, 503 U.S. 1, 4 (1992). Because prison officials, when confronted with prison disturbances, have the difficult job of balancing the need to maintain and restore discipline, the core question in determining whether the force used against an inmate was applied in a good-faith effort to maintain or restore discipline inside the prison or, conversely, whether the force was applied maliciously and sadistically, for the very purpose of causing harm. *Id*. at 7; *see also Whitley v. Albers*, 475 U.S. 312, 320 (1986) ("But, in making and carrying out decisions involving the use of force to restore order in the face of a prison disturbance, prison officials undoubtedly must take into account the very real threats the unrest presents to inmates and prison officials alike, in addition to the possible harms to inmates against whom force might be used.").

With those concerns at the forefront, the Supreme Court held that in determining whether a prison official acted maliciously or sadistically to cause an unnecessary and wanton infliction of pain, courts should consider: (1) the extent of the injury suffered; (2) the need for the application of force; (3) the relationship between the need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any efforts made to temper the severity of a forceful response. *Hudson*, 503 U.S. at 7; *see also Baldwin v. Stadler*, 137 F.3d 836, 839 (5th

Cir. 1998). Each factor is neither exclusive nor determinative, as each case must be judged on its own facts. *Baldwin*, 137 F.3d at 839.

**V. Yarborough's Objections, Analysis, and Discussion**

*A. The Underlying Incident*

In his original complaint and response to Officer Loftis's motion for summary judgment, Yarbrough argued that he never once spit on Officer Loftis because he was preparing for release on parole. He also denied that she requested his identification card before force was employed and highlighted that there was no evidence whatsoever of his spitting on her.

Based on the summary judgment evidence, the Magistrate Judge found that Yarborough caused a disturbance by failing to obey Officer Loftis's orders to get up from his table inside the chow hall. As explained in the Report, Officer Loftis highlighted that she applied force—by hitting him on the head—to restore order and discipline, as Yarborough spit on her as he refused to comply. She also noted that because he continued to move toward her, she struck him again. Officer Loftis's use of force stemmed directly from Yarborough's refusal to obey orders coupled with his spitting on her; therefore, the Magistrate Judge reasoned that her use of force was applied in a good-faith effort in order to restore order/discipline. *See, e.g.*, *Jackson v. Hochberg*, 669 Fed.App'x 274, 175 (5th Cir. 2016) (Mem.) (explaining that an officer's actions in forcing an inmate to law down on a dirty floor and by bruising his skin through placing him in tight handcuffs during a riot was "applied in a good faith effort to restore discipline rather than maliciously or sadistically to cause harm.").

On objection, Yarborough complains about Officer Loftis's actions before and during the use of force. First, he argues that "if we, as inmates confined to TDCJ must follow rules and orders, then the same <u>must</u> go for officers as well." Essentially, he is stating that if inmates are

5

required to obey orders and leave the chow hall when directed, then Officer Loftis is likewise required to allow inmates twenty-minutes to eat—as required by TDCJ policy. Yarborough insinuates that because prison officials wear "gray" uniforms, as opposed to the white uniforms worn by inmates, their statements are automatically more "truthful" than an inmate's.

Second, Yarborough again denies spitting on her. He states that after serving twenty years' imprisonment, there would be no reason to risk his parole by spitting on a prison official. Moreover, he insists that Officer Loftis was behind him during the incident, which contradicts the notion that he spit on her chest. He complains of the lack of any evidence indicating that he spit on her, contending that witnesses could attest to that fact. Finally, Yarborough again denies that Officer Loftis requested his identification card before employing force. However, many of these objections are attempts to relitigate claims within the underlying pleadings.

The Magistrate Judge properly found that Officer Loftis's actions were not applied maliciously or sadistically, but, instead, were applied in an effort to restore prison discipline and order. As the Report found, Officer Loftis applied force in direct response to Yarborough's spitting on her as he defied orders; further, she continued to apply force as he continued to move toward her. Her actions were designed not to cause harm, but rather to restore discipline and order after being disobeyed and struck by an inmate. *See, e.g.*, *Turner v. Baird*, 2017 WL 6547678, *1 (5th Cir. Dec. 21, 2017) ("Because Turner was refusing orders and becoming increasingly belligerent, we conclude that the district court did not err in finding that the single burst of chemical agent was used in a 'good-faith effort to maintain or restore discipline," rather "than maliciously or sadistically to cause harm.'") (citing *Hudson*, 503 U.S. at 7.).

To the extent that Yarborough continues to deny that he spit on Officer Loftis or that she requested his identification card, these arguments have already been addressed within the

Magistrate Judge's Report. Moreover, he now contends that he did not even blow her a kiss; however, the record of his disciplinary hearing demonstrates that Yarbrough explained that as he walked by her in the chow hall, he "blew with [his] mouth[;] I did not mean it like spit, she hit me." (Dkt. #27, Exhibit C at 59). This testimony belies the notion that there was no evidence that he spit on her—he admitted that he used his mouth in *some* fashion directed at Officer Loftis. Yarborough's objections that if he did spit on her, "as she claims, then [other inmates] would have seen me spit on Officer Loftis" and that other prison officials would have heard her requests for identification are pure speculation.

Yarborough even asserted in his underlying complaint that he blew her a kiss rather than spit—a statement that continues to strain credulity that he did not spit on her or use his mouth in directed at her. Either way, as the Magistrate Judge correctly found, Officer Loftis reasonably believed that she was spit on and immediately applied force to prevent further disturbance or reoccurrence. She continued to apply force as he persisted in moving toward her, which one could argue was threatening. *See Whitley v. Albers*, 475 U.S. 312, 320 (1986) ("But, in marking and carrying out decisions involving the use of force to restore order in the face of a prison disturbance, prison officials undoubtedly must take into account the **very real threats the unrest presents to inmates and prison officials alike**, in addition to the possible harms to inmates against whom force might be used.") (emphasis supplied).

With respect to potential witnesses, the Court notes that the record contains two witness statements from fellow inmates. In one statement, the inmate stressed that Yarborough was "supposed to be going home within a month. He has a clean disciplinary record. I can't believe he spit on her." (Dkt. #27, Exhibit A at 36). The other inmate explained that he was behind Yarbrough as they walked through the chow hall, and has known Yarborough for "17 years. He's

7

my best friend. I want to see him go home. He didn't spit on that boss lady. He is a benevolent person." (Dkt. #27, Exhibit C at 49). However, these statements do not necessarily show that Yarborough did not spit on Officer Loftis. Both statements imply that Yarborough's kind nature and parole status would prevent him from doing such an act, which neither proves nor disproves that he spit. Moreover, and perhaps more importantly, both witness statements are void of any mention of what Yarborough admitted during his disciplinary hearing: namely, that when he walked by, he "blew with [his] mouth, I did not meant it like spit."

Accordingly, whether Yarborough blew her a kiss, spit, or used his mouth in another matter directed to her, the summary judgment evidence shows that Officer Loftis's use of force was necessary to restore order/discipline and to prevent reoccurrence. *See Bonet v. Shaw*, 669 F.Supp.2d 300 (W.D.N.Y. 2009) ("Having made the foolish decision to spit in an officer's face, plaintiff suffered the consequence of the officers' attempts to control him and prevent reoccurrence of that behavior.").

His remaining objections—that prison officials should follow the rules if inmates are required to obey rules—is irrelevant and fails to demonstrate a constitutional violation. *See Sharp v. Anderson*, 220 F.3d 587, 2000 WL 960568 at *1 (5th Cir. 2000) ("To obtain relief under § 1983, the plaintiff must demonstrate the violation of a constitutional right.") (citing *Allison v. Kyle*, 66 F.3d 71, 73 (5th Cir. 1999)). While the Constitution does not permit inhumane prisons, it does not mandate comfortable prisons either, and to the extent that such conditions or aspects of prison life are restrictive or even harsh, "they are part of the penalty that criminal offenders pay for their offenses against society." *See Rhodes v. Chapman*, 452 U.S. 337, 348 (1981); *see also Lawrence v. Knighten*, 30 F.3d 1490, 1994 WL 397704 at *4 (5th Cir. July 13, 1994) ("A prison is not a

country club; officials often must make quick, decisive judgment calls in an effort to preserve order.").

   B. *Extent of Injuries*

In his underlying pleadings, Yarborough stated that he sustained facial redness, a black eye, and a cut inside his mouth as a result the use of force. He highlighted that he was given pain medication and salt for his mouth, as he had difficulty eating and drinking. The Magistrate Judge determined that to the extent that Yarborough suffered any injury, the injury was nevertheless *de minimus* because during both medical exams—completed immediately after the incident and five days later—medical officials denoted that he sustained no physical injuries but was experiencing facial redness. Crucially, the during Yarborough's second medical exam, the nurse found "no visible injuries," specifically denoting noting that his pain was a "0" and without making any findings as to his eye. The Magistrate Judge found that the medical records refute his assertions.

On objection, Yarborough contends that his injuries were certainly more than *de minimus*. Specifically, he contends that because he "received medical treatment for my injuries, I feel that my injuries could be classified as being more than *de minimus*." He points to the Merriam Webster dictionary, which purportedly defines injury as "as an act that damages or hurts," in order to prove that he sustained injuries because he explained Nurse Sulser that his "face hurt."

However, Yarborough's analysis is not the legal standard. Simply because Yarborough received medical treatment for his purported injuries does not necessarily render the injury more than *de minimus*. As the Report highlighted, while a minor, insignificant injury does not preclude the finding of an excessive force violation, the Fifth Circuit has repeatedly emphasized that an inmate must have suffered more than a *de minimus* injury. *See Gomez v. Chandler*, 163 F.3d 921,

9

923 (5th Cir. 1999). There is no requirement that the injury be significant, serious, or more than minor. *See Monroe v. Melder*, 247 F.3d 241, 2001 WL 43566 at *3 (5th Cir. 2001).

Moreover, the Fifth Circuit held that an inmate's sore and bruised ear that lasted for three days, resulting from an officer twisting the inmate's ear, was *de minimis* and thus insufficient to provide a basis for a meritorious civil rights lawsuit. *See Siglar v. Hightower*, 112 F.3d 191, 194 (5th Cir. 1997) ("However, the Eighth Amendment's prohibition of cruel and unusual punishment excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'") (internal citation omitted). Similarly, the Fifth Circuit found that mere discomfort and swelling to an inmates writs—for which he did not seek medical attention—was not cognizable under section 1983. *See Williams v. Stevens*, No. 98-41401, 1999 WL 684145 (5th Cir. Aug. 12, 1999) (unpublished).

Conversely, in *Gomez*, the Fifth Circuit found that injuries consisting of pain, cuts, scrapes, and contusions to the face, head and body that resulted from an inmate being knocked down as well as punched and kicked, requiring medical treatment, were more than *de minimis*. *See* Gomez, 163 F.3d 921, 924 (5th Cir. 1999). In *Gomez*, there was evidence that prison officials knocked him down, scraped his face against the concrete floor, repeatedly punched him in the face for about five minutes, and then was kicked in the stomach by a third officer. *Id*. These cases comport with the Supreme Court's caveat in *Hudson* that not every touch by prison officials constitutes excessive force:

> That is not to say that every malevolent touch by a prison guard gives rise to a federal cause of action. *See Johnson v. Glick*, 481 F.3d at 1033 ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights"). The Eighth Amendment's prohibition of 'cruel and unusual' punishment necessary excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'

10

*Hudson*, 503 U.S. at 9-10.

The question of whether the physical force utilized resulted in more than a *de minimis* injury must be evaluated in the context in which the force was deployed. In *Ikerd v. Blair*, 101 F.3d 430, 434 (5th Cir. 1996), the court explained that the amount of injury necessary to satisfy the requirement of some injury and to establish a constitutional violation is directly related to the amount of force that is constitutionally permissible under the circumstances. *See also Hudson*, 503 U.S. at 7 (explaining that "the extent of the injury suffered by [an inmate] is one factor that may suggest whether the use of force" was excessive in a particular circumstance).

Here, as the Report highlighted, the record completely refutes Yarborough's claims that he suffered a black eye and a cut inside his mouth. Medical examiners found no physical injury when he was examined immediately after force was employed and five days later. Accordingly, the objective factors of Yarborough's medical records show no evidence of any injuries consistent with his allegations—thereby rendering those allegations implausible. *See, e.g.*, *Foxworth v. Khoshdel*, civil action no. 4:07cv3944, 2009 U.S. Dist. LEXIS 89581, 2009 WL 3255270 (S.D.Tex., September 28, 2009, no appeal taken) (conclusory allegations of "painful physical injuries to the gums and mouth" were not supported by objective findings in the medical records and thus could not overcome a motion for summary judgment); *Turner v. Moffett*, civil action no. 3:12cv220, 2013 U.S. Dist. LEXIS 132525, 2009 WL 5214070 (S.D.Tex, September 17, 2013) (district court held that "based on Turner's medical records, which show no evidence of any injuries consistent with his allegations of deliberate indifference, the Court finds that Turner's allegations are implausible and thus subject to summary judgment.").

Simply because he was treated—through being given pain medication and salt for his mouth—does not mean his injuries were more than *de minimus* and thus sufficient to find a

11

constitutional violation. Consequently, the Magistrate Judge correctly found that Yarborough's allegations of his injuries lack support or substantiation in his medical records and thus do not overcome Officer Loftis's motion for summary judgment. *See Hudson*, 503 U.S. at 1. Yarborough's objections concerning the extent of his purported injuries are meritless.

*C. Parole*

In his original complaint, Yarborough argued that the force incident caused him to lose his opportunity to be released on parole. He maintained that he was found guilty of spitting on Officer Loftis during the disciplinary hearing and then lost 360 days of good-time and was given a forty-five day commissary restriction, a forty-five day cell restriction, and a reduced custody classification. He insisted that he would have been released on FI-3R parole in June 2014 absent the disciplinary action.

The Magistrate Judge found that Yarborough was eligible for FI-3R parole, which is essentially a transfer to a TDCJ rehabilitative program with the potential for release to parole only after the rehabilitative program is completed and not earlier than three months from a specified date. *See* Tex. Admin. Code § 145.12(4)(C). However, because there is neither a constitutional right to parole in Texas nor a right to rehabilitative programs or education, Yarborough failed to show a deprivation of a constitutional right. On objection, Yarborough maintains that he was actually granted FI-3R status and at the time of the incident, he was enrolled in a Changes II class and had only 27 hours left to complete the class.

Nevertheless, the Magistrate Judge correctly found this claim was meritless. It is well-settled that there is no constitutional right to parole in Texas and, likewise, no right to rehabilitative programs or classes while incarcerated. *See Esparza v. Deputy*, 20 F.3d 469, 1994 WL 122158 at *1 (5th Cir. 1994) ("A state has no constitutional obligation to provide educational or vocational

programs for prisoners."); *Newman v. Alabama*, 559 F.2d 283, 291 (5th Cir. 1977) (explaining that programs such as basic education and transitional programs are instituted and operated on the initiative of state prison authorities); *see also Pohl v. Livingston*, 241 Fed. App'x 180, 181 (5th Cir. 2007) ("This court has determined that Texas law does not create a liberty interest in parole that is protected by the Due Process Clause.").

Accordingly, because there is no constitutional right to parole or rehabilitation programs/classes, Yarbrough's objections concerning the grant of his FI-3R status and his few hours before completion is irrelevant and meritless. *See Allison v. Kyle*, 66 F.3d 71, 73 (5th Cir. 1995) ("[N]either habeas or civil rights relief can be had absent the allegation by a plaintiff that he or she has been deprived of some right secured to him or her by the United States Constitution or the laws of the United States.") (internal quotations omitted); *see also Orellana v. Kyle*, 65 F.3d 29, 32 (5th Cir. 1995) ("It follows that because Orellana has no liberty interest in obtaining parole in Texas, he cannot complain of the constitutionality of procedural devices attendant to parole decisions."). Yarborough's objections on this point are meritless.

## VI. Conclusion

The Court has conducted a careful *de novo* review of those portions of the Magistrate Judge's proposed findings and recommendations to which the Plaintiff objected. *See* 28 U.S.C. §636(b)(1) (District Judge shall "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made."). Upon such *de novo* review, the Court has determined that the Report of the United States Magistrate Judge is correct and the Petitioner's objections are without merit. Accordingly, it is

**ORDERED** that Plaintiff Yarborough's objections, (Dkt. #33), are overruled and the Report of the Magistrate Judge, (Dkt. #31), is **ADOPTED** as the opinion of the District Court. Furthermore, it is

**ORDERED** that the above-styled civil rights complaint is **DISMISSED WITH PREJUDICE**. Finally, it is

**ORDERED** that any and all motions which may be pending in this action are hereby **DENIED**.

**So Ordered and Signed**
Jan 11, 2018

_____
Ron Clark, United States District Judge